Harold E. **MIKESELL** and William R. Mikesell, Executors of the Estate of Harold R. Mikesell, Deceased, Appellants (Respondents Below),

v.

Joyce **MIKESELL**, Appellee (Objector Below).

No. 3–681A154.

Court of Appeals of Indiana, Fourth District.

March 9, 1982.
On Rehearing May 3, 1982.

Robert S. Justice, Logansport, for appellants.

Richard M. Rhodes, Peru, for appellee.

CONOVER, Judge.

Appellee-objector filed objections to the executors' final accounting filed in the estate of Harold R. Mikesell. The appellants-executors, William R. Mikesell and Harold E. Mikesell, submitted claims for $16,000 in attorney fees and $6,000 executor fees for each executor. After a hearing in the Fulton Circuit Court, executor fees were reduced to $3,400 and attorney fees were lowered to $11,750. The executors timely filed a motion to correct errors seeking to introduce newly discovered evidence. The motion to correct errors was denied and appellants brought this appeal.

We affirm.

ISSUES

1. Did the court err in refusing to reopen the case to admit newly discovered evidence?

2. Was the evidence submitted sufficient to warrant the reduction in attorney and executor fees?

FACTS

Harold and William Mikesell are sons of the decedent, Harold R. Mikesell, and the executors of his estate. The chief assets of the estate were farms in Cass and Fulton counties. In addition to land, decedent owned farming and butchering equipment, buildings on one farm, growing crops and other personal property. The final accounting listed the value of the estate as $252,-000. Decedent's will devised all of his property to Harold, William and Paul Mikesell and to Patricia Terpstra, a daughter of a deceased sister of the other devisees.

As part of their duties, the executors held auction sales to dispose of the assets of the estate. They personally farmed the land, harvested the crops and sold them on a 50/50 basis with the estate. To dispose of them, executors accepted bids on both farms. Paul Mikesell submitted the only bid on the Fulton County farm. Ed Unger, a cousin of the executors, submitted the only bid on the Cass County farm. Both bids were substantially below the appraised value of the farms and executors decided to engage a realtor to sell them. Eventually each farm was sold for the appraised value.

The executors filed a final estate tax return using the bids received as the real estate valuation. When the farms sold at their appraised values, the gain was reported on the fiduciary return instead of an amended estate tax return. This resulted in an IRS audit and ultimately required that the value of the farms be included on the estate tax return.

Throughout the administration of the estate the executors and attorney attended to the daily affairs of the estate. They arranged for the protection of the farm buildings and stored crops to prevent recurrent vandalism. They filed reports with the Department of Agriculture to secure payment

for crop shortfalls. Negotiations were conducted with an insurance company to obtain the proceeds of an accident insurance policy. It became necessary to probate the will of the executors' mother to clear title to the farms. One executor lived nineteen miles and the other forty miles from the farms. Management of the farms forced the executors to make numerous trips to the property that would not have been made otherwise.

Executors and their attorney testified that Paul Mikesell and his wife Joyce complicated and lengthened estate administration by making continual objections to the executors' handling of estate matters. Paul disagreed with the executors on the conduct of farming operations and frequently called them and attorney Justice to discuss matters relating to the estate. Paul also filed written objections to the sale of the farms. A hearing was held on these objections and were resolved only when the executors agreed to post a $50,000 bond. More objections were filed to the final accounting by Joyce Mikesell resulting in another hearing on executor and attorney fees.

At the hearing, both executors testified to the work done for the estate listed previously. Attorney Justice testified that his own estimate of time spent on the Mikesell estate was 400 hours. He offered no documentation to support that estimate. A local attorney testified for the appellants as an expert that an estate similar to the Mikesell estate would generate attorney's fees in excess of $10,000 and possibly as high as $20,000. He further testified that a fee of $6,000 for each executor would be reasonable.

After judgment, the executors filed a motion to correct errors seeking review of the decision of the trial court on the basis of newly discovered evidence. The evidence was contained in an affidavit executed and sworn by William Mikesell and related a conversation between William and his father. In that conversation, William said his father expected attorney fees for his estate to be $15,000 to $16,000 and executor fees to be $5,000 to $6,000 for each executor. William's justification for not previously coming forward with this evidence was his belief that the conversation with his father was privileged and inadmissible hearsay.

## NEWLY DISCOVERED EVIDENCE

■ Appellants contend they are entitled to have the affidavit of William Mikesell considered by the trial court as newly discovered evidence. Ind. Rules of Procedure, Trial Rule 59(A)(6)[1] provides newly discovered evidence is one ground for a motion to correct errors. However, an appellant seeking a new trial on the basis of newly discovered evidence bears the burden of first establishing the four criteria of *Kelly v. Bunch*, (1972) 153 Ind.App. 407, 409, 287 N.E.2d 586, 588–589:

"A motion for a new trial based on newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized. The newly discovered evidence must be material, and must be more than just cumulative or impeaching. The party seeking a new trial because of newly discovered evidence must show that the evidence is such that it could not have been discovered before the trial by the exercise of due diligence, and must show that the evidence is such that it would reasonably and probably result in a different verdict. The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court, whose decision will be disturbed only for a manifest abuse thereof." (citations omitted)

■ The element of due diligence requires the proponent of the evidence to set out facts showing the exercise thereof. *Ligon Specialized Hauler, Inc. v. Hott*, (1979) Ind.App., 384 N.E.2d 1071. Moreover, a bare assertion that reasonable diligence has been used is insufficient to show due diligence. *Matis v. Yelasich*, (1956) 126 Ind. App. 287, 132 N.E.2d 728.

■ There is no support for the executors' claim that the evidence could not have been discovered by due diligence. The affidavit recites only William's belief that the conversation was privileged and constituted inadmissible hearsay. Thus, it is said, exercise of due diligence could not have lead to the discovery of that evidence. Contrary to that assertion, however, we believe an attorney using due diligence could discover evidence within his client's knowledge.

---

1. T.R. 59 "(A) Motion to correct error—Bases for. The bases for a motion to correct error are established, without limitation, as follows:

(6) Newly discovered material evidence which could not, with reasonable diligence have been discovered and produced at the trial;
. . . ."

## ATTORNEY AND EXECUTOR FEES

The executors and attorney challenged the finding of the trial court that fee reductions were unsupported by the evidence presented. When we review a judgment for insufficiency of the evidence we neither weigh the evidence, nor judge the credibility of the witnesses. We consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. If evidence of a probative value exists, we must affirm the trial court. *Beck v. Indiana Surveying Co.,* (1981) Ind. App., 429 N.E.2d 264.

██ Absent testamentary compensation for attorneys and personal representatives, the Indiana Probate Code [2] authorizes the court to fix reasonable attorney and executor fees. The proper amount of such fees is a matter for the sound discretion of the trial court and we will not disturb that ruling absent an abuse of judicial discretion. *Matter of the Estate of Newman,* (1977) Ind.App., 369 N.E.2d 427. A variety of factors may be considered to properly assess the reasonable value of fees for attorneys and executors:

"In making the allowances the court may take into consideration the labor performed, the nature of the estate, the difficulties attending the recovery of the assets and location of heirs or devisees, settlements in the estate, the peculiar qualifications of the administrator, her faithfulness and care, and all other factors necessary to aid the court in a consideration fair to the estate and reasonable for the personal representative and attorney." (Citations omitted.)

*Estate of Newman, supra.* Additionally, this court has recognized personal expertise of trial judges to value attorney fees. *Matter of the Estate of Kingseed,* (1981) Ind. App., 413 N.E.2d 917, transfer denied.

██ Testimony by the expert witness on the issue established a range for attorney fees in an estate similar to the Mikesell estate to be $10,000 to $20,000. The expert also submitted a sample fee schedule for estate work used in his law practice. Mr. Justice, attorney for the estate, took the stand in his own behalf and testified that he estimated that he had spent 400 hours on the estate. This was substantiated only by a narrative account of activities performed for the estate. On cross-examination, he testified that many of the functions previously related were routine estate matters.

The trial court applied the sample fee schedule to the facts and concluded that such method would yield a fee of $9,500. Applying a flat 4% rate to the gross estate, the attorney fee would be $10,800. The estate tax return estimated attorney fees of $8,000. The amount finally approved by the court substantially exceeded any of these amounts.

The fees were raised in recognition of certain factors that added to the complexity of the estate. A hearing on removal of executors required extra preparation for that proceeding. Numerous phone calls by Paul and Joyce Mikesell increased the time spent to some extent. Executors also argue that objections to the sale of the farms forced them to acquire the services of realtors. This is not an extraordinary burden on the executors, nor do the objections to sale seem to have reduced the marketability of the farms. In fact, the farm upon which Paul bid sold faster than the other one.

Any complications created by the estate taxes were minor. The tax issues involved were not excessively complicated and the audit seems to have resulted from the executors' attempt to create gain for the estate by listing the sale price of the farms on fiduciary returns rather than on an amended estate tax return. As to the other items listed by the executors as matters complicating the administration of the estate they are routine functions of estate administration. Since the fees are within the range

2. Ind.Code 29–1–10–13 "Compensation; attorney's services

Sec. 13. If a testator by will makes provision for compensation of his personal representative, that shall be taken as his full compensation unless he files in the court a written instrument renouncing all claims for the compensation provided by the will before qualifying as personal representative. The personal representative, when no compensation is provided in the will, or when he renounces all claim to the compensation provided in the will, shall be allowed such compensation for his services as attorney and for other services not required of a personal representative. An attorney performing services for the estate at the instance of the personal representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable. Such compensation may be allowed at the final settlement; but at any time during administration a personal representative or his attorney may apply to the court for an allowance upon the compensation of the personal representative and upon attorney's fees."

the evidence shows to be reasonable for this estate, we conclude the evidence was sufficient to support a reduction in fees.

A similar situation exists respecting the lowering of executor fees. The evidence presented, while showing competence in the handling of estate affairs, relates primarily to routine matters. Sale of real and personal property, protection of assets, filing final tax returns and communication with other devisees are normal functions associated with the duties of executors. Executors did take on significant extra duties when they assumed personal responsibility for farming the estate property during administration of the estate. The burdens of farming the extra property were offset somewhat by the 50–50 profit sharing agreement with the estate. The trial court raised executor fees in recognition of executor's desire not to personally farm the estate property.

The basic rule applied by the trial court that executor fees should not exceed one half of the attorney fees was not challenged. Thus, we find that the evidence also was sufficient to support a reduction of executors' fees.

The judgment of the trial court is affirmed.

MILLER, P. J., and YOUNG, J., concur.

ON PETITION FOR REHEARING

■ Our first decision in this matter was rendered on March 9, 1982. *Mikesell v. Mikesell*, (1982) Ind.App., 432 N.E.2d 55. On March 29, 1982, appellants filed a document in brief format entitled Petition for Rehearing. The brief contains no separate assignment of appellate error, rather it discusses in argumentative narrative the reasons they believe our prior decision is erroneous.

By failing to set out separately a concise assignment of appellate error, the appellants/petitioners have failed to comply with the requirements of Ind. Rules of Procedure, Appellate Rule 11(A). A.R. 11(A) states in part:

"Rehearings. *Application for a rehearing of any cause may be made by petition, separate from the briefs,* signed by counsel, and filed with the clerk within twenty (20) days from rendition of the decision, stating concisely the reasons why the decision is thought to be erroneous. Such application may, if desired, be supported by briefs, but such briefs will

not be received after the time allowed for filing the petition." (Emphasis added.) Failure to meet the requisite of this rule may result in dismissal of the petition for rehearing. *Lamb v. Thieme*, (1977) Ind. App., 369 N.E.2d 681. As we have previously indicated:

"This court, as well as all litigants who come before us, must comply with the procedural rules adopted by the Indiana Supreme Court. It is our duty to obey these rules and adhere to the construction which has been placed upon them."

*Ross v. Schubert*, (1979) Ind.App., 396 N.E.2d 147.

Appellants have not complied with A.R. 11(A). We therefore dismiss appellants' Petition for Rehearing.

MILLER, P. J., and YOUNG, J., concur.