James A. ERNST, Petitioner-Appellant,

v.

Georgia G. ERNST,
Respondent-Appellee.

No. 43A03–8603–CV–90.

Court of Appeals of Indiana,
Third District.

Jan. 29, 1987.

A. Dale Bloom, David Peebles, Fort Wayne, for petitioner-appellant.

Robert W. Miller, Stephen R. Hardacre, Anderson, for respondent-appellee.

STATON, Judge.

James Ernst appeals the trial court's division of property in the dissolution of his marriage to Georgia Ernst, raising three issues for our review:

I. Did the trial court err in valuing James's interest in the Ernst family businesses?

II. Did the trial court err in refusing to grant a new trial based on newly discovered evidence?

III. Did the trial court improperly use a 50/50 formula to divide the marital assets?

We affirm.

## I.

### Valuation of Businesses

James and Georgia Ernst were married for eleven years and seven months. No children were born of the marriage, although both parties had children by prior marriages. At the time of the dissolution, Georgia was earning approximately $23,000 per year as a high school counselor, and during the minority of her children she was receiving between $500 and $600 per month for their support as a result of their father's accidental death. James was earning between $100,000 and $120,000 per year in the form of salary, bonuses and dividends from two closely-held corporations started by his family.

At the time the two were married in 1972, James owned property which the trial court valued at $490,423, including an interest in three Ernst family businesses.[1] Georgia owned property valued by the court at $93,924. During the course of the marriage, the value of the marital estate increased by $656,149. The trial court awarded each party property in the amount he brought into the marriage, and in addition to this, it awarded property valued at $362,110 to James and property valued at $294,038 to Georgia. The bulk of the property awarded to James consisted of his interest in two of the Ernst family businesses, and it is the trial court's valuation of these interests that James first disputes.

Indiana Code § 31–1–11.5–11 provides that the disposition of property in a marital dissolution is to be "just and reasonable," and that in determining what is just and reasonable, the trial court should consider the following factors:

(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

1. In 1982, through arbitration proceedings, James was divested of his interest in one of the three businesses in exchange for a larger interest in another.

I.C. 31–1–11.5–11(C). IC 31–1–11.5–11.1 also requires the trial court to consider the tax consequences of its property disposition.

Division of property under this standard is within the sound discretion of the trial court, as is the valuation of assets. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, 1244; *Finley v. Finley* (1981), Ind.App., 422 N.E.2d 289. We will reverse only if that discretion is abused, that is, if the result is clearly against the logic and effect of the facts and circumstances before the court. *Wright, supra*, 471 N.E.2d at 1244. We will not reweigh the evidence or judge the credibility of witnesses. *Canaday v. Canaday* (1984), Ind.App., 467 N.E.2d 783, 785.

■ There was conflicting evidence before the trial court concerning the value of James's business interests, with James and Georgia each presenting expert witness testimony. James acknowledges that this court will not reverse a judgment on the basis of conflicting evidence, *Julien v. Julien* (1979), Ind.App., 397 N.E.2d 651, 655. He argues, however, that the testimony of Georgia's expert, Chris Haynes, was so speculative and unreliable that it could not constitute probative evidence. Specifically, James objects to the methodology Haynes used to appraise his business interests. All that James is really doing is asking us to reweigh the evidence, and this we will not do. See *Canaday, supra.*

James also argues that the trial court erred in setting the value of his business interests because its figure did not match that of any of the expert witnesses. James suggests that this was the result of faulty computation.

■ We find no error. The trial court has discretion in valuing assets, and as trier of fact can weigh expert testimony. Since there was evidence before the trial

court to support a finding of up to $767,-314 [2] as the value of James's business interests, the trial court's finding that these interests were worth $759,450 was supported by the evidence.

We do not find that the trial court abused its discretion in valuing James's business interests, nor in dividing the marital assets in a just and reasonable manner.

## II.

### *Newly Discovered Evidence*

During the trial, James testified that he knew of no business comparable to Frame Services, Inc. within a 100–mile radius of Ft. Wayne, where Frame Services, Inc. is located, and that perhaps there was none in the entire midwest. After the dissolution decree had been entered, James spoke by telephone with Carlton Kruse, a commercial realtor in Ft. Wayne, and learned that Kruse had recently appraised and sold a business "just like" Frame Services, Inc., and located within ten miles of it. In his motion to correct errors, James sought a new trial on the basis of newly discovered evidence—an appraisal of Frame Services, Inc. by Carlton Kruse.

■ A party seeking a new trial on the basis of newly discovered evidence bears the burden of establishing the following four criteria:

(1) The newly discovered evidence could not have been discovered before trial by the exercise of due diligence;

(2) It is material and relevant;

(3) It is more than cumulative or impeaching; and,

(4) It will probably produce a different result.

*Mikesell v. Mikesell* (1982), Ind.App., 432 N.E.2d 55, 57, *trans. denied.* The granting of a new trial because of newly discov-

**2.**

|  |  |
|---|---|
| $503,800 | Frame Services, Inc. (Record at 765, Respondent's Exhibit L.) |
| $257,400 | Ernst Realty (Record at 776, Respondent's Exhibit N.) |
| $ 5,964 | Truck Parts & Service, stipulated value |
| $ 150 | Shares in Lincoln National Life Ins. Co. |

ered evidence is within the broad discretion of the trial court, and we will reverse only for an abuse of that discretion. *Id.*

A bare assertion of due diligence will not suffice; the moving party must set out facts showing the exercise thereof. *Id.* Further, there is a strong presumption that the alleged evidence could have been discovered before trial. *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind. App., 452 N.E.2d 989, 1013. James asserts that the existence and sale of a comparable business was, and could only have been, discovered by "fortuitous circumstance." He explains that, because he believed that no comparable business existed within a 100–mile radius, he had no reason to discover that an "almost identical" business in fact existed within ten miles of Frame Services, Inc., and had recently been sold. Such an explanation strains belief, and cannot suffice to show the exercise due diligence. Even so, we will consider the other factors.

James asserts that the appraisal evidence prepared by Mr. Kruse is material and relevant, and more than merely cumulative, because it is the only "actual" evidence of what Frame Services, Inc. would sell for. In fact, it is simply another appraisal, and Mr. Kruse would be simply another expert witness, notwithstanding that his appraisal would be based on his experience in the appraisal and sale of a comparable business. James argues that Kruse's appraisal would produce a different result, because it would provide the "benchmark of value." The trial court would not be bound by such an opinion, however, but could weigh it against the others. The trial court had discretion in determining whether Kruse's appraisal warranted a new trial, and we do not find that it abused its discretion.

### III.

#### Fifty/Fifty Formula

In its original order, the trial court awarded each party property in the amount that he or she brought into the marriage, and divided the remaining marital assets 50/50, ordering Georgia to pay James $6,000 to equalize the awards. In its order on the motion to correct errors, the court used a 50/50 division as a "starting point," then deviated from it to "prevent what well may be thought to be an unreasonable allowance to the wife." (Record at 443). As a result, James received just over 55% of the additional marital property.

James argues that the trial court improperly made a 50/50 division. In *Luedke v. Luedke* (1985), Ind., 487 N.E.2d 133, our Supreme Court reversed a Court of Appeals decision requiring that the trial court use a 50/50 split as a presumptive starting point, deviating from it only upon a finding that one spouse has "seriously neglected" his or her role. *See Luedke v. Luedke*, Ind.App., 476 N.E.2d 853, *reh. denied* (1985), 479 N.E.2d 619. The Supreme Court rejected a 50/50 split as a rebuttable presumption, but it did not reject it as a natural starting point. In fact, the Court wrote, "Perhaps it could be said that in beginning to divide property pursuant to a dissolution of marriage, one's mind *ought* to lean toward an equal division until facts are brought forward to indicate otherwise, ..." *Luedke, supra*, 487 N.E.2d at 134. We find no error in the trial court's use of 50/50 as a starting point for its property division.

Finally, James raises two "miscellaneous" issues on which he fails to present cogent argument. Nonetheless, we will discuss these issues briefly. First, he argues that the trial court failed to consider the contribution of the Ernst family businesses and James Ernst personally in dividing the property. The contribution of each spouse, and the extent to which they acquired property prior to the marriage are among the factors to be considered under IC 31–1–11.5–11, but the weight to be accorded any one factor is within the discretion of the trial court. *See McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148, 1151. The trial court awarded James and Georgia property in the amount they brought into the marriage,

and awarded James over 55% of the assets acquired during marriage. He was allowed to keep all of his corporate interests. We find no abuse of discretion. James also argues that the effect of the property division was as though a portion of his future income was being awarded, a possibility which is improper. *Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792, 795. James does not explain this effect, though, and since the property division involved only existing assets at their current valuations, we find no error.

We affirm.

GARRARD, P.J., concurs.

HOFFMAN, J., concurs with opinion.

HOFFMAN, Judge, concurring.

I concur but must point to the trial court's findings regarding Paragraph III. Fifty/Fifty Formula of the majority opinion.

The trial court found:

"7.01 *Proper Division of Marital Estate* That the Court commences with the thought that the marital estate generated during the marriage should be divided with each party getting 50% thereof, realizing that that is not a presumptive starting point but is simply a rational one to be considered only as a starting point and to be thereafter modified as may be just and reasonable in light of the circumstances."

It then sets out other circumstances.