## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard Ranucci
Carmel, Indiana

ATTORNEY FOR APPELLEE

Katherine J. Noel
Noel Law
Kokomo, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vance Voorhis,<br>*Appellant-Respondent,*<br><br>v.<br><br>Danielle Voorhis,<br>*Appellee-Petitioner.* | October 22, 2019<br><br>Court of Appeals Case No.<br>18A-DR-1778<br><br>Appeal from the Tipton Circuit Court<br><br>The Honorable Thomas R. Lett, Judge<br><br>Trial Court Cause No.<br>80C01-1508-DR-263 |

**Friedlander, Senior Judge.**

[1]    In this dissolution action, the trial court issued its findings of fact, conclusions thereon, and decree of dissolution that dissolved the parties' marriage, valued the parties' assets, and divided the marital estate. To effect an equal distribution of the parties' marital assets, the trial court entered a judgment in

the amount of $15,167.50 against Vance Voorhis ("Husband") and in favor of Danielle Voorhis ("Wife"). The court also directed Husband to pay $10,000.00 of Wife's attorney fees as well as outstanding valuation expenses that Wife owed to the company that she hired to perform business valuation services. Husband appeals, presenting three issues for our review, which we consolidate and restate as follows:

> 1. Whether the trial court abused its discretion when valuing the property of the marriage and then distributing it; and
>
> 2. Whether the trial court improperly ordered Husband to pay Wife's attorney fees and outstanding valuation expenses.

We affirm in part, reverse in part, and remand with instructions.

[2] The facts of this case are as follows. Husband and Wife were married on July 27, 1991. Wife filed a petition for dissolution on July 2, 2015. At the time Wife sought dissolution of the marriage, the parties had no children under nineteen years old. Wife was employed as an elementary school teacher, and Husband was self-employed.

[3] During the marriage, the parties jointly owned a home, located in Tipton County, Indiana ("marital home"), that had an attached lot. The parties owned several vehicles, including a 2011 Chevrolet HHR. The parties also owned a Kubota mower that was used to mow the grounds at the marital home.

[4] During the course of the marriage, the parties also owned three businesses: D&V Housing, LLC ("D&V"); B.E.S. Enterprises, Inc. ("BES"); and

Tomorrow Transport ("TT"). D&V is a real estate holding company, owned by both Husband and Wife, that held four different real estate properties. The properties were located on College Street in Windfall, Indiana; East Street in Tipton, Indiana; Washington Street in Tipton, Indiana; and Dearborn Street in Tipton, Indiana. BES, owned solely by Husband, is a company that provides concession stand services for sporting events. TT was created as a holding company for the vehicles used by BES, which included two Ford Transits, a GMC Cargo Van, a fork truck, and two Isuzu vehicles. All the businesses were run by Husband, and Wife did not participate in the day-to-day operations of the businesses. The marital estate also included insurance proceeds for fire damage to the property located on East Street, as well as additional personal property, retirement assets, and bank account funds.

[5] On December 18, 2017, and then continuing on May 22, 2018, the trial court conducted a final hearing where the parties presented competing evidence regarding the valuation of the marital assets. Wife's experts were Brian Minor from Blue & Co., LLC, and Steven Taylor, a real estate appraiser. Husband's experts were Douglas Speer, an appraiser, and Penny Lutocka, a certified public accountant with Houlihan Valuation Advisors. With respect to the values assigned to the marital assets, the trial court largely accepted the valuations, methodologies, and conclusions of Wife's experts.

[6] On July 22, 2018, the trial court entered a final dissolution decree, accompanied by extensive findings of fact and conclusions thereon, dissolving the parties' marriage, ordering an equal distribution of the parties' assets, and detailing the

distribution of the marital property. To achieve an equal distribution, the trial court entered a $15,167.50 judgment against Husband. The trial court also required him to "be responsible for $10,000.00" of Wife's attorney fees and the outstanding balance that Wife owed to Blue & Co., the company that she hired to perform the valuations of Husband's businesses. Appellant's App. Vol. 2, p. 18. The trial court's findings, conclusions thereon, and decree provide in relevant part as follows:

> 10. Just prior to the filing of the dissolution, the rental home located at 116 Dearborn St., Tipton, was destroyed by fire [sic].[1] Husband received insurance proceeds in the sum of $29,250.00. He kept said sum and did not divide it with Wife.
>
> . . .
>
> 14. Wife had business valuations performed to appraise the value of Husband's three business entities, BES, Tomorrow Transport, and D&V Housing. Mr. Brad Minor of Blue & Company presented and testified to his valuations in great detail. Mr. Minor concluded the value of BES was $243,000.00, Tomorrow Transport was $34,000.00, and D&V Housing was $81,000.00. Mr. Minor's testimony was credible and unbiased. The Blue & Co. report was substantially delayed due to [Husband's] failure to cooperate in turning over documentation.
>
> 15. Husband had a valuation of BES and Tomorrow Transport conducted by Houlihan Valuation Advisors. The valuation presented by Husband concluded the value of both entities to be $209,207.00. This value is perplexing in that Tomorrow

---

[1] The trial court's findings, conclusions thereon, and dissolution decree mistakenly found that the *Dearborn Street property* was destroyed by fire *prior* to Wife filing the dissolution petition. It was, however, the East Street property that was damaged by a fire that occurred *after* Wife filed her petition for dissolution. We have determined that these errors are immaterial.

Transport alone owns six commercial vehicles, commercial real estate, and has provided a significant source of income to the marriage. The Court also believes this valuation was based on inaccurate property values for the [College Street] building, as [Husband's] appraisal was almost ½ that of the assessed value of the property and prior appraisals.

. . .

18. The Court finds there is a disparity in income between Wife and Husband. While Husband testified he believes he makes less than Wife, the Court finds this suspicious. Husband is in controls [sic] of what salary, expenses, costs, and income the business provides. The parties have acquired substantial assets and little debt during the marriage. This was clearly not accomplished on a teacher's salary alone.

19. The Court finds the parties [sic] assets and liabilities shall be divided pursuant to Exhibit [1].[2] Further, [W]ife shall receive a judgment against [H]usband in the sum of $$15,167.50 [sic] to effectuate an equal distribution of the martial [sic] estate. The Court declines to deviate from an equal distribution.

. . .

21. Due to the disparity in income, [Husband] shall be responsible for $10,000.00 of [Wife's] attorney fees. [Husband] shall also be responsible for [Wife's] outstanding balance to Blue & Co.

*****

DECREE OF DISSOLUTION

. . .

1. The marriage of the parties is hereby dissolved.

---

2 Exhibit 1 contains a table illustrating the distribution of the parties' marital assets (hereinafter, "marital balance sheet"). While information from the marital balance sheet has been included in this opinion, the sheet itself has not been reproduced and included herein.

2. Wife is awarded as her sole and separate property the following: all property (and its value therein) listed in the "Wife" Column in Exhibit 1, and the [marital home and the attached] real estate . . . , and her personal property now in her possession.

. . .

4. Husband is awarded as his sole and separate property the following: all property (and its value therein) listed in the "Husband" Column in Exhibit 1, and the real estate located at . . . College [St.], . . . East St., . . . Washington St., . . . and . . . Dearborn St. . . . , and his personal property now in his possession.

5. Husband is awarded BES, Tomorrow Transport, and D&V Housing and all the assets and liabilities associated therewith, . . . . Husband is awarded the [fire] insurance proceeds [for the damage to the East Street property] in the sum of $29,250.00. He is further awarded [the] . . . 2011 Chevy HHR, . . . [the] 1995 Kubota [mower] and attachments, . . . household goods and furnishings in his possession, and the guns and ammunition.

*Id.* at 16-21.

[7] This appeal followed. Additional facts will be provided as necessary.

[8] Husband contends that the trial court abused its discretion when it valued the property of the marriage, distributed it, and ordered him to pay Wife's attorney fees and outstanding valuation expenses. The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of that discretion. *DeSalle v. Gentry*, 818 N.E.2d 40 (Ind. Ct. App. 2004). The parties must overcome the presumption that the trial court considered and complied with the applicable law, and that presumption is one of the strongest presumptions pertinent to our consideration on appeal. *Id.* We may not

reweigh the evidence or judge the credibility of the witnesses, and we consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.*

[9] According to the record before us, neither party filed a Trial Rule 52(A) written request with the trial court for special findings and conclusions thereon. Instead, at some point during the final hearing, the parties asked to submit to the court proposed findings and conclusions, and at the close of the final hearing, the trial court directed the parties to do so. *See* Tr. Vol. 2, p. 227. We therefore treat the trial court's findings as sua sponte findings of fact. *See Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006); *see also Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089 (Ind. Ct. App. 2011).

[10] Sua sponte findings control only as to the issues they cover, and a general judgment standard will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.*

[11] We "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A).

> A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the dissolution court, or if a review of the record leaves this court with a firm conviction that a mistake has been made. In making this determination, we will not weigh the evidence or make credibility determinations, and we will only consider the evidence favorable to the judgment and reasonable inferences drawn therefrom.

*R.R.F. v. L.L.F.*, 956 N.E.2d 1135, 1139 (Ind. Ct. App. 2011) (internal citation omitted). "Findings are clearly erroneous if there are no facts in the record to support them either directly or by inference, and a judgment is clearly erroneous if the wrong legal standard is applied to properly found facts." *Crider v. Crider*, 26 N.E.3d 1045, 1047 (Ind. Ct. App. 2015). "[W]e may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g,* 4 N.E.3d 666.

[12] On appeal, Husband specifically contends that the trial court abused its discretion by: including certain assets and debts in the marital pot and excluding others, improperly valuing certain marital property, and awarding Wife attorney fees and outstanding valuation expenses. Husband's first two arguments are, essentially, a challenge to the trial court's valuation and distribution of certain marital assets, and we will consolidate and address those

arguments as such. Thereafter, we will address Husband's argument regarding the award to Wife of fees and expenses.

## Husband's Challenge to Trial Court's Valuation and Distribution of Certain Marital Assets

[13]    Husband takes issue with the trial court's valuation and distribution of the following marital assets: (1) D&V, specifically the East Street property held by the business and the fire insurance proceeds for the property; (2) BES and TT; (3) the lot adjoining the marital residence; (4) the Chevrolet HHR; (5) the Kubota mower; (6) Husband's household items; and (7) the parties' jewelry. "We review a trial court's decision in ascertaining the value of property in a dissolution action for an abuse of discretion." *Balicki v. Balicki*, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), *trans. denied*. Generally, there is no abuse of discretion if a trial court's chosen valuation is within the range of values supported by the evidence. *Id.* "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Alexander v. Alexander*, 927 N.E.2d 926, 935 (Ind. Ct. App. 2010) (quotation and citation omitted), *trans. denied*. In reviewing a trial court's valuation of property in a dissolution, we will neither reweigh the evidence nor judge the credibility of witnesses. *Bass v. Bass*, 779 N.E.2d 582 (Ind. Ct. App. 2002), *trans. denied*.

## 1. D&V – East Street Property and Fire Insurance Proceeds

[14] D&V, which held four properties, was valued at $81,000.00.[3] One of the properties held by D&V was the East Street property. The East Street property was a double that contained two residential rental units. On April 16, 2016, a fire damaged the property. On June 2, 2016, Husband received from the insurance company two checks, both in the amount of $14,625—for a total payment of $29,250.00. Husband, however, refused to disclose the amount of the insurance proceeds to Wife's expert at Blue & Co., as Husband determined that the expert did not need to know the amount of the insurance proceeds to calculate the value of the property.

[15] Blue & Co. valued the East Street property at $60,000.00. To arrive at this value, Blue & Co. listed a net book value for the property of $26,457.00 and added a $33,543.00 adjustment "based on [the] Douglas Speer report plus estimated insurance proceeds based on prior rent amounts." Appellant's App. Vol. 2, p. 60. Thus, Blue & Co. utilized the income approach to value when it based the $60,000.00 value in part on the amount of rental income the property had produced in the past. Husband's expert, Douglas Speer, assessed a value of

---

[3] The $81,000.00 valuation for D&V was based on the trial court's acceptance of the following values for the four properties held by the business: East Street at $60,000.00; Washington Street at $38,000.00; Dearborn Street at $2,500.00; and College Street at $158,000.00. The marital balance sheet lists the four properties but does not assign individual values to the properties. Instead, the sheet lists the value assigned to D&V ($81,000.00) and shows that D&V was awarded to Husband.

$8,000.00 for the property, pre-fire, based upon the condition in which previous tenants had left the property.

[16] Husband contends that the trial court erred by accepting Blue & Co.'s valuation of the East Street property because, according to Husband, the valuation failed to account for the fact that "renters had about destroyed the inside [of the property,] and [the property] needed everything to be repaired"; and the valuation "rested on the mistaken assumption that the East Street fire occurred *before* Speer's appraisal of East Street for $8,000.00." Appellant's Br. pp. 19, 29 (emphasis added). He argues that the trial court should have accepted the $8,000.00 value that Speer placed on the property because that value was assessed pre-fire. Husband also argues that by overvaluing the East Street property, the trial court overvalued D&V. We disagree.

[17] The trial court heard testimony regarding both valuations for the property, including the impact of the fire and the tenants' vandalism on the value of the property. For example, Wife's expert from Blue & Co., Brian Minor, testified during cross-examination as follows regarding how he arrived at the $60,000.00 valuation and his opinion of Speer's $8,000.00 valuation for the property:

> A . . . [W]e utilized the appraisal but then we had to estimate the value of the real estate based on some prior rents. So, that property was receiving rents of about [$]9500 a year. [Speer's] appraisal valued the property at [$]8,000, but the appraisal valued it after the property was destroyed by fire. . . .
>
> Q Now, are you sure that the appraisal was done after the fire?
>
> A Yes.

Q But if it's not then that number's incorrect?

A Then the 8,000 would be accurate. *Well, it wouldn't make sense. I mean obviously a property that's receiving rents of 9500 a year wouldn't be worth $8,000. It would pay for itself in less than a year. That wouldn't make any sense. . . . So, just common sense says that no, that appraisal would not be accurate.* Common sense tells me that it was after the fire.

Tr. Vol. 2, pp. 22-23 (emphasis added). Speer testified that the reason he valued the property at $8,000.00, pre-fire, was because the property had been "destroyed inside" by the previous tenants, and the property needed extensive repair work. *Id.* at 92. He also testified, however, that if an individual "put about 50,000 [dollars] in [the property]," it might be worth between $70,000.00 and $75,000.00. *Id.*

[18] The trial court heard the testimony of both experts, including Minor's mistaken belief that Speer's appraisal was performed post-fire, and determined that the East Street property was worth $60,000.00 and that D&V was worth $81,000.00. The trial court's determination is within the scope of the evidence and therefore not an abuse of discretion.

[19] Husband further argues that the trial court "improperly double counted insurance proceeds for the fire [that occurred] at [the] East Street [property]." Appellant's Br. p. 9. According to Husband, the $60,000.00 valuation that the court accepted for the property accounted for the $29,250.00 in insurance proceeds. Thus, Husband claims that the trial court erred in "includ[ing] the fire insurance payments in the marital estate a second time, by counting them as

a separate asset" attributable to Husband. *Id.* We agree and, therefore, must remand for the trial court to remove the $29,250.00 as an asset attributable to Husband as that amount was included in arriving at the value placed on the East Street property.

## 2. BES and TT

Husband next challenges the valuations of BES and TT. His argument is two-fold. First, he argues that the trial court abused its discretion by failing to include in the marital estate, as a debt of the marriage, a $23,293.26 debt owed to BES. He also argues that the trial court erred by assigning a value of $243,000.00 to BES and a separate value of $34,000.00 to TT.

### *A. Debt Owed to BES*

In 2010, Husband and Wife refinanced their home to obtain a lower interest rate on funds they borrowed to finance BES. As part of the refinance, they were required to pay off the existing home mortgage in the amount of $52,000.00. Husband and Wife borrowed the $52,000.00 from BES and paid off the mortgage. As a result, Husband and Wife owed BES $52,000.00. Blue & Co. listed this $52,000.00 debt on the BES balance sheet as an asset and labeled it "Loans to shareholders[.]" Appellant's App. Vol. 2, p. 43. When Blue & Co. determined the valuation of BES, it counted the loan as an asset to BES.

Between 2010, and the date of the dissolution filing, Husband withheld money from his paychecks to pay down this debt owed to BES. As of the date of the

dissolution filing, the BES balance sheet showed a remaining debt of $23,293.26.

[23] Husband asserts that the trial court erred by not including the $23,293.00 (amount rounded to nearest whole number) as a debt on the marital balance sheet. According to Husband, since this debt was counted as an asset of BES, the debt increased the value of BES by $23,293.00. Husband argues that because the amount was not included as a marital debt, Husband received no credit for the debt, and the debt on BES's books is, essentially, dissolved. Husband claims that "[t]he net effect is for Wife to take a residence without mortgage, and Husband owes the equivalent to BES, but gets no credit for the debt, even though he was assigned the corresponding asset within BES." Appellant's Br. p. 25. Husband contends that this was an abuse of discretion that requires remand so that the trial court can add the debt to the marital pot and divide the debt equally between the parties. We disagree.

[24] Blue & Co. valued BES at $243,000.00, taking into account the $23,293.00 owed to BES *and* an additional $156,353.00 that Blue & Co. listed on BES's balance sheet as "Loans *from* shareholders"—an amount BES *owes to* the parties. Appellant's App. Vol. 2, p. 43 (emphasis added). Regarding the $156,353.00, Minor, with Blue & Co., testified that the amount was a "shareholder note[,] which is monies that were owed to [Husband.]" Tr. Vol. 2, p. 14. He further testified that the amount was an account receivable owed to Husband from BES. On direct examination, Minor was asked, "If [Husband] were to waive that claim or request that he not have those monies

returned to him, would that number then need to be added into [BES's valuation]?" *Id.* at 19. Minor answered, "Correct." *Id.* When asked, "[a]nd in fact, just to clarify, you've discounted the value of the business due to that account receivable[,]" Minor replied, "I lowered the value by that . . . exact number." *Id.*

[25] Returning to the $23,293.00 at issue, and applying Husband's argument regarding the debt, if the trial court erred by failing to include the $23,293.00 owed to BES in the marital pot as a debt of the parties, then the trial court also erred in failing to include in the marital pot as an *asset* the $156,353.00 that BES *owes* the parties. Husband has not carried his argument thus far.

[26] Both the debt and the asset values were taken into account in Blue & Co.'s determination of the value of BES. The trial court accepted the valuation, included the valuation amount in the marital pot, and awarded BES to Husband. As the $23,293.00 debt was already accounted for in the valuation of BES, the trial court did not need to list the amount as a separate, line-item-debt on the marital balance sheet. No abuse of discretion occurred here.

### B. Valuation of BES and TT

[27] Husband argues that the trial court abused its discretion by adopting Blue & Co.'s valuations for BES at $243,000.00 and TT at $34,000.00. Blue & Co. used an income approach in reaching the valuations—evaluating income stream, capitalization rate, value of operations, excess working capital, and structured debt for both companies, and making adjustments for lack of

marketability as well as for personal goodwill (the personal relationships that Husband has developed with his customers). Husband takes particular issue with the addition of excess working capital in the values of the two businesses. According to Husband:

> If Blue [& Co.] had not added excess working capital to the values of BES and TT, the . . . values of these businesses would have been $71,888 less ($67,604 for BES plus $4,284 for TT). [Thus,] Blue's . . . valuations of BES and TT, together $277,000 ($243,000 + $34,000), without excess working capital increases for both ($277,000 - $71,888), would have been $205,112.

Appellant's Br. p. 33. Husband also notes that his expert with Houlihan Valuation Advisors, Penny Lutocka, did not include excess working capital in her determination of the value of the businesses and calculated a combined indicated value for BES and TT, together, at $206,300.00.[4]

[28] Husband attempts to support his arguments by asserting that Blue & Co. used incorrect accounting ratio methodologies to calculate the excess working capital values and that this error led to an overvaluation of the businesses. Husband maintains that there is no evidence in the record to support the use of the particular ratios Blue & Co. used to calculate excess working capital in its final determination of the valuations for the businesses. We disagree.

---

[4] We note that the trial court found Lutocka's valuation "perplexing in that Tomorrow Transport alone owns six commercial vehicles, commercial real estate, and has provided a significant source of income to the marriage." Appellant's App. Vol. 2, p. 17.

[29] The trial court heard extensive testimony from both parties' experts regarding the valuations for BES and TT, which included testimony regarding excess working capital and ratios. The trial court ultimately adopted Wife's valuations that were provided by Blue & Co. The court was well within its discretion to do so. *See Balicki*, 837 N.E.2d at 536 (generally, there is no abuse of discretion if a trial court's chosen valuation is within the range of values supported by the evidence).

### 3. Lot Adjoining Marital Residence

[30] Husband also argues that the trial court abused its discretion by failing to include in the marital pot the value of the lot that adjoins the marital residence. Wife's expert, Steven Taylor, appraised the marital residence and the adjacent lot as having a combined value of $300,000.00. The trial court adopted the appraised amount and awarded the marital residence and the lot to Wife. Husband maintains that Taylor's appraisal included the lot upon which the marital residence sat but did *not* include the value of the separate lot that was located *adjacent to* that of the marital residence. According to Husband, "[t]his mistake in turn resulted in incorrect valuation of the entire marital estate and corrupted the intended equal division of the whole pot." Appellant's Br. p. 10. We find that the evidence of record does not support Husband's argument and that Husband's argument is an invitation to reweigh the evidence, which we cannot do. *See DeSalle*, 818 N.E.2d 40.

[31]   Taylor testified on direct examination as follows regarding his appraisal of the marital residence and the adjacent lot:

> Q  And in fact did you go to the home site and inspect the home?
>
> A  Yes, uh-huh.
>
> Q  And the land around the area?
>
> A  Yes.
>
> *****
>
> Q  Okay.  And the property you appraised had some acreage with it as well; is that correct?
>
> A  Correct.
>
> Q  And what is, I'm sorry, your appraisal actually includes that acreage; is that accurate?
>
> A  Yes, it's -- yeah.
>
> Q  And what value did you determine that the property located [in Tipton] was as of the day of your valuation?
>
> A  It was 300,000.
>
> Q  *And that was for the house and the property attached thereto?*
>
> A  *Yes, the land and the outbuilding and everything, yes.*

Tr. Vol. 2, pp. 6-7 (emphasis added).  Wife testified that she recalled that Taylor's appraisal included the marital residence and the adjacent lot. Husband, on the other hand, testified that Taylor's appraisal did not include the value of the lot in question, and Husband offered the testimony of his expert, Douglas Speer, who testified that the lot had a separate value of $20,000.00.

[32]   Husband's argument, essentially, is that the trial court should have believed his testimony, and that of his expert, over the testimony of Wife's expert.  The trial

court, however, was not required to believe Husband's testimony. "[I]t is the province of the trial court to determine which witnesses to believe when it hears the evidence." *In re Marriage of Julien*, 397 N.E.2d 651, 654 (Ind. Ct. App. 1979). The trial court determined that Taylor's appraisal included the marital residence and the adjacent lot and that the appraised value of the two properties totaled $300,000.00. We will not second-guess the trial court and assume the role of factfinder. No error occurred here.

## 4. Chevrolet HHR

[33] Husband next argues that the trial court abused its discretion by assigning a value to the parties' 2011 Chevrolet HHR vehicle that, according to Husband, was not supported by the evidence. The trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will only be disturbed where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Trabucco v. Trabucco*, 944 N.E.2d 544 (Ind. Ct. App. 2011). If the trial court's chosen valuation is within the range of values supported by the evidence, we will affirm. *Goossens v. Goossens*, 829 N.E.2d 36 (Ind. Ct. App. 2005).

[34] Wife originally placed zero dollars on the value of the HHR on her proposed assets and liabilities sheet, as the vehicle was driven exclusively by the parties' daughter. Wife wanted the vehicle to be given to their daughter and any value associated with the vehicle to be excluded from the divorce proceedings. At the final hearing, however, Husband testified that he was not "comfortable" giving

the vehicle to his daughter and excluding the vehicle's value from the marital pot. Tr. Vol. 2, p. 126.

[35] Husband also testified that the HHR was worth $4,237.00, based upon the Kelley Blue Book value of the vehicle.[5] He admitted into evidence a copy of the valuation from Kelley Blue Book, listing the vehicle's condition as "Good Condition" and a value of $4,237.00. Respondent's Ex. Q, Ex. Vol. 4, p. 15. Wife then testified that she had placed a value of $4,700.00 on the vehicle, and that this was reflected on her revised assets and liabilities spreadsheet that was admitted into evidence. Wife did not submit any documentation supporting her valuation of the vehicle. The trial court ultimately found the HHR to be an asset of the marriage, assigned a value of $4,700.00, and awarded the vehicle to Husband.

[36] Husband maintains that the trial court erred by adopting Wife's valuation for the HHR, claiming that "Wife offered no basis for her valuation[,]" whereas his valuation was based upon the value listed in the Kelley Blue Book pricing report. Appellant's Br. p. 41. Husband's argument, however, is a request for us to reweigh the evidence and judge witness credibility, which we cannot do. *Crider*, 15 N.E.3d 1042. It is well-settled that a valuation submitted by one of the parties is competent evidence of the value of property in a dissolution

---

[5] The Kelley Blue Book has been used since 1926 as a resource used to find the value of a vehicle. *See* KELLEY BLUE BOOK®, https://www.kbb.com (last visited Sept. 11, 2019).

proceeding and may alone support the trial court's determinations in that regard. *See, Alexander*, 927 N.E.2d at 935. Additionally, we "will not reverse a judgment on the basis of conflicting evidence[.]" *Ernst v. Ernst*, 503 N.E.2d 619, 621 (Ind. Ct. App. 1987) (citation omitted). The trial court's determination that the HHR was worth $4,700.00 was not clearly against the logic and effect of the facts and circumstances before the court. We therefore find that the trial court did not abuse its discretion by adopting the value.

[37] Husband also argues that the trial court abused its discretion by failing to include on the marital balance sheet the $4,463.53 debt (remaining loan) associated with the HHR. We agree.

[38] It is well established that all marital property goes into the marital pot for division, including both the assets and the liabilities of the parties, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); *Webb v. Schleutker*, 891 N.E.2d 1144 (Ind. Ct. App. 2008); *Capehart v. Capehart*, 705 N.E.2d 533 (Ind. Ct. App. 1999), *trans. denied*. This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Thompson v. Thompson,* 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), *trans. denied*. While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

[39] Here, the evidence establishes that as of June 30, 2015, two days prior to the filing of the dissolution petition, the HHR carried a loan balance of $4,463.53. No evidence was presented that the debt was retired during the dissolution proceedings. Thus, the loan debt is a marital liability and it should have been considered by the trial court in fashioning an equitable division of the marital property. Therefore, we remand with instructions to the trial court to include the debt associated with the HHR in the marital pot and determine how the debt should be allocated.

## 5. Kubota Mower

[40] Husband next contends that the trial court abused its discretion by valuing the parties' Kubota mower at $4,000.00 and assigning the mower to Husband. According to Husband, "[t]his was error because the parties, by their respective attorneys, made a verbal, on-the-record stipulation that the Kubota would be assigned to Wife at a value of $3,500." Appellant's Br. p. 40.

[41] On the first day of the final hearing, Wife testified on direct examination as follows regarding her desire to keep the Kubota mower and how much she thought the mower was worth:

Q You want to keep that vehicle [sic]?
A Yes. That mower, yes.
Q That mower. And you've valued that at $3500?
A Correct.

Tr. Vol. 2, p. 34. Husband's attorney then stipulated to the assignment of the mower to Wife, and Wife's attorney agreed.

[42] Approximately five months later, however, at the continuation of the final hearing, Wife presented testimony on direct examination indicating that she wanted the mower assigned to Husband and that the mower should be valued at $4,000.00 because it had a snowblower attachment. The testimony was as follows:

> Q Okay. And then we have also moved the Kubota tractor and attachments over to Husband's column; is that correct?
> A Correct.
> Q Now, that Kubota mower is $3500 I believe a stipulated value, but it also has an attachment that wasn't included at the last hearing; is that correct?
> A Correct. He also took the snowblower that went with it.
> Q And that has a value of $500 so you've totaled it to 4,000?
> A Correct.

*Id.* at 154. Husband did not object to Wife's desire to have the mower assigned to him. Later, however, on cross-examination, he testified that he believed the value of the mower, including the attachment, was $3,500.00.

[43] The parties originally agreed that the mower would be assigned to Wife; however, Wife later indicated that she wanted the mower assigned to Husband, and Husband did not object. The trial court heard the testimony of the parties and ultimately determined that the mower and its attachment were valued at

$4,000.00 and that the mower should be assigned to Husband. The court was within its discretion to do so.

## 6. Husband's Household Items

[44] Husband argues that the trial court abused its discretion by assigning to Husband's household items a value that, according to Husband, was not supported by the evidence. Husband "[took] a garage sale approach" in estimating the value of his household items and introduced into evidence a detailed item-by-item inventory that indicated his household items were worth $4,100.00. Appellant's Br. p. 38. Wife testified on direct examination as follows regarding her belief that Husband's items were worth $7,685.00:

> Q Okay. Now, you have various household items; is that accurate?
>
> A Correct.
>
> Q And pursuant to your husband's estimate, he has $7,685 of household goods and furnishings?
>
> A Yes.
>
> . . .
>
> Q And this is going through, your husband has lots of tools and equipment and things like that; is that accurate?
>
> A That is accurate.

Tr. Vol. 2, p. 36. The trial court adopted Wife's valuation for Husband's household items.

[45] Husband's argument, essentially, is that because Wife offered only her testimony as to what value she believed should be placed on Husband's items

and did not provide her own detailed valuation for the items, Wife's evidence was not sufficient to support the trial court's adoption of her valuation. Husband further argues that the manner in which Wife's attorney examined Wife at the hearing, and the answers that Wife provided, failed to provide context for Wife's answers or clarify whether the $7,685.00 valuation was an estimate that was "a holdover from confidential negotiations or mediation." Appellant's Br. p. 39.

[46]   A valuation "submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Skinner v. Skinner,* 644 N.E.2d 141, 144 (Ind. Ct. App. 1994) (citations omitted). Additionally, we "will not reverse a judgment on the basis of conflicting evidence[.]" *Ernst,* 503 N.E.2d at 621 (citation omitted).

[47]   Here, Husband provided the trial court with an item-by-item list of his household items—items that included numerous tools and equipment—and the estimated values that Husband believes should be placed on each item, using a "garage sale approach," for a total value of $4,100.00 Appellant's Br. p. 38. Wife testified that Husband's items were valued at $7,685.00. The trial court was not obliged to accept Husband's assertion of the value of individual household items, even if Wife did not expressly refute Husband's evidence. To the contrary, it is well established that "[a] trial court, like a jury, is entitled to take into consideration in weighing the evidence its own experience and the ordinary experiences in the lives of men and women." *Clark v. Hunter*, 861

N.E.2d 1202, 1207 (Ind. Ct. App. 2007) (alteration original; quotation and citation omitted). Here, because Husband's valuations were estimations based upon a garage sale approach, and in light of our standard of review, we decline to question the trial court's determination of the valuation evidence for Husband's household items. We therefore find that the trial court did not abuse its discretion in adopting Wife's valuation for Husband's household items.

## 7. Parties' Jewelry

[48] Next, Husband argues that the trial court erred in not including in the marital pot an engagement ring that Husband purchased for Wife sometime in 2013, that Husband valued at $2,300.00, and a pair of diamond earrings that Husband purchased during the marriage for $1,500.00. Evidence was presented at the final hearing that the earrings were a wedding gift to the parties' daughter. While Husband disputes this, he presented testimony at the final hearing that he does not know "what happened to those earrings[,]" and has no "idea whose possession those earrings are in[.]" Tr. Vol. 2, p. 207.

[49] The evidence presented at trial indicates that neither party is in possession of the earrings. As such, the trial court did not abuse its discretion in excluding them from the marital pot. However, regarding the engagement ring, the evidence indicates that the ring was purchased during the marriage and that Wife is in possession of the ring. Although the trial court may have wished to allow Wife to keep the ring, the value of the ring should have been included in the marital estate and considered by the trial court in fashioning the equitable division of the property. *See Thompson,* 811 N.E.2d 888, 912 (trial court may

ultimately determine that a particular asset should be awarded solely to one spouse, but must first include asset in its consideration of the marital estate to be divided). Thus, we remand for inclusion of the value of the engagement ring in the marital estate and recalculation, if necessary, of the distribution of the marital property.

## Attorney Fees and Valuation Expenses

[50] Finally, Husband contends that the trial court abused its discretion by requiring him to "be responsible for $10,000.00" of Wife's attorney fees and the outstanding balance that Wife owed to Blue & Co. Appellant's App. Vol. 2, p. 18. Husband argues that Wife should not be awarded attorney fees and valuation expenses for a number of reasons. According to Husband, "[t]he trial court's finding of income disparity to justify fee awards was unreasonable and contrary to the evidence that neither party enjoyed a superior position from which to afford fees." Appellant's Br. p. 46. Husband also argues that none of his conduct during the dissolution proceedings amounted to a level of misconduct sufficient "to justify the fee awards and did not cause Wife to incur additional attorney or valuator fees." *Id.* at 47. Husband maintains that between 2012 and 2015, his businesses, in total, averaged $12,010.00 of annual income before taxes. According to Husband, "[e]ven adding these undistributed, pre-tax profits to [his $45,000.00] salary, he still earned less than

Wife's salary [($45,000 + $12,010) = $57,010; $57,010 < $60,000]."[6] *Id.* at 44.

Husband notes that Wife's salary is earned for thirty-nine weeks of work per year, and his salary is earned for fifty-two weeks of work per year. He argues that, contrary to Wife's testimony, the income from the businesses was not used to purchase the parties' personal vehicles; and that, while business income was used for personal expenses related to cell phones, vehicles, gas, food, and earned rewards points, the amount of money that was put toward these things was so insignificant that it cannot be used to justify a finding that Husband's salary exceeded Wife's. He further argues that the attorney fees award is not properly reflected on the marital balance sheet and that the trial court's award of the valuation expenses is ambiguous, and thus improper, because it fails to state the amount that Husband owes to Blue & Co.

[51] Indiana statutory law pertaining to dissolution proceedings authorizes a court to order a party to pay the attorney fees of the other party:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

---

[6] Husband argued at the final hearing that Wife earned a salary of between $58,000.00 and $60,000.00 per year.

Ind. Code § 31-15-10-1(a) (1997). The legislative purpose of this statute is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *Balicki*, 837 N.E.2d at 543. We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274 (Ind. Ct. App. 2007). Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied.* In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id.* In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id.* "Further, the trial court need not give its reasons for its decision to award attorney's fees." *Id.* (quoting *Thompson*, 811 N.E.2d at 928).

[52] Here, we find that the trial court's award of attorney fees to Wife is supported by the record. At the final hearing, Wife testified that her salary from her elementary school teaching position was $58,000.00 a year. Husband testified that he is self-employed; his "paycheck comes from [BES]"; and he earns a salary of $45,000.00 a year. Tr. Vol. 2, p. 108. Although the trial court was not required to give reasons for its decision to award attorney's fees, it noted in its findings its skepticism regarding Husband's stated salary and ultimately

determined that there was a disparity in income between the parties and that Husband earned more than Wife. Specifically, the court found as follows:

> While Husband testified he believes he makes less than Wife, the Court finds this suspicious. Husband is in controls [sic] of what salary, expenses, costs, and income the business provides. The parties have acquired substantial assets and little debt during the marriage. This was clearly not accomplished on a teacher's salary alone.

Appellant's App. Vol. 2, p. 17. This evidence alone supports the trial court's award of attorney fees to Wife and there was no abuse of discretion. Likewise, the trial court was within its discretion to require Husband to pay the outstanding valuation expenses that Wife owed to Blue & Co. *See* I.C. § 31-15-10-1(a) ("court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article"). Furthermore, the trial court's award of attorney fees and valuation expenses was not improperly reflected on the marital balance sheet, as the award does not constitute marital property and is not eligible for inclusion in the marital estate.

[53] Finally, we disagree with Husband's assertion that the trial court's requirement that he pay the outstanding valuation expenses amounts to an order to "write a blank check to Blue [& Co.]" Appellant's Br. p. 48. To the contrary, when Wife testified that she had an outstanding balance with Blue & Co. for business valuation services and requested that the trial court require Husband to pay the

balance, she introduced into evidence an invoice that listed the amount due as $9,244.37.

[54] Based on the foregoing, we conclude that the trial court did not abuse its discretion or commit clear error when valuing and distributing the marital property of the parties and awarding Wife attorney fees and valuation expenses, except that the trial court erred when it (1) counted the $29,250.00 in fire insurance proceeds as an asset attributable to Husband, (2) failed to include in the marital pot the debt associated with the HHR vehicle, and (3) failed to include in the marital pot the value of the engagement ring that Husband purchased for Wife. Thus, we reverse the dissolution decree to that extent and remand for the trial court to correct these errors and adjust its split of the marital property accordingly.

[55] The judgment of the trial court is affirmed in part and reversed in part, and we remand for further proceedings with instructions.

Najam, J., and Bradford, J., concur.